**DRESSER INDUSTRIES, INC./ATLAS DIVISION and Commercial Insurance Company of Newark, New Jersey, Appellants,**

v.

**Edward C. HIESTAND, and State of Alaska, Workers' Compensation Board, Appellees.**

**No. S–318.**

Supreme Court of Alaska.

July 5, 1985.

Richard Waller, Stone, Waller & Rose, Anchorage, for appellants.

William Erwin and B. Gil Johnson, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

Dresser Industries (Dresser) appeals from a judgment of the superior court affirming an award made under the Alaska Workers' Compensation Act. Dresser contends that the Workers' Compensation Board (Board) based its award on a modification of a factual finding made in a prior proceeding without notice to Dresser of its intent to modify that finding, as required by AS 23.30.110. Dresser further contends that the modification would have been improper even with notice, because the Board does not have authority, under AS 23.30.-130(a), to modify a factual finding based on a change in the applicant's testimony. We reverse.

## I

Edward Hiestand, a wireline operator for Dresser, was seriously injured in a work related accident on March 10, 1980. Hiestand remained on the Dresser payroll, at his full salary, throughout the period of his convalescence. When he returned to work the following June, Hiestand was assigned other work because he was still unable to perform the duties of a wireline operator. He worked first as a drafter/printer, and later as an operator/trainer. Both of these jobs were part-time, but Hiestand continued to receive the base wage paid a full-time wireline operator.

By August 1981, Hiestand's physicians concluded that his injury and the physical demands of the occupation would prevent him from ever returning to work as a wireline operator. He was advised to pursue a less strenuous form of work. Hiestand immediately reported his doctors' recommendations to his supervisor at Dresser. Shortly thereafter, his employment with the company ended. Whether Hiestand was fired or resigned voluntarily is disputed.

Soon after leaving Dresser, Hiestand began working with the Alaska Department of Labor, Division of Vocational Rehabilitation (DVR), on a personal rehabilitation plan. Hiestand also filed an application for adjustment of claim with the Alaska Workers' Compensation Board, seeking total

temporary disability benefits from the date of his termination, August 13, 1981. The Board (hereinafter Board I) held a hearing on his application in November 1981.

At the November hearing, Dresser argued that Hiestand was not entitled to benefits because he was not "disabled,"[1] and that he was unemployed because he voluntarily left his job at Dresser. Hiestand testified that Dresser terminated him at his request. Board I concluded that Hiestand was not "disabled" because his termination had been voluntary. As a result, it denied Hiestand temporary total disability benefits, for the period from the date of his termination to the date of the Board's order.

In December 1981, the DVR completed the plan for Hiestand's rehabilitation, and a request was made for second injury funding through the Workers' Compensation Act. Because that request required the Board's approval, Hiestand filed a second application for claim adjustment in June 1982, seeking vocational rehabilitation expenses, penalties, travel costs and attorney's fees.

According to Dresser, the designated issue at the second hearing (hereinafter Board II) was whether Hiestand was entitled to benefits in spite of his voluntary resignation. Hiestand, however, argues that the issue before Board II was not controlled by the circumstances of his termination at Dresser, because the two claims were for distinct periods of time.[2] Hiestand maintains that the second hearing was to determine whether he was entitled to temporary total disability benefits, commencing with his enrollment in the rehabilitation program, and continuing until its completion.

Following the second hearing, Board II awarded Hiestand temporary total disability benefits for the duration of his rehabilitation program. In addition, the Board authorized second injury funding to help finance the rehabilitation plan DVR devised for Hiestand. In reaching its decision, the Board reversed its earlier factual findings. Board I had found that Hiestand voluntarily terminated his employment with Dresser, but Board II concluded that his termination was involuntary.

 Dresser appealed the second Board decision to the superior court, claiming that it was not notified that Board II was reconsidering the Board I factual finding. This, according to Dresser, was a violation of AS 23.30.110. Dresser further argued that, even if it had received notice, the modification was improper under AS 23.30.130(a). The superior court affirmed the Board's decision.[3] We hold that, although the Board's modification of the factual finding was within its authority under AS 23.30.130(a), Dresser did not receive the notice required under AS 23.30.110.

II

Dresser argues that it had no notice that modification of the earlier factual findings was being contemplated by Board II, and that Board II, therefore, violated AS 23.30.110 and AS 23.30.130(a).[4] Hiestand argues

1. Under AS 23.30.265 disability "means incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment."

2. The initial Board decision denied Hiestand's claim for temporary total disability benefits from August 13, 1981 to November 27, 1981. Board II found that Hiestand's second request for temporary total disability benefits was for a different period of time: from the beginning of his rehabilitation program (January 5, 1982) until the completion of that program.

3. Where, as in this case, the superior court is acting as an intermediate court of appeal, we independently review the Board's findings of fact, rather than those of the superior court. *Burgess Constr. v. Smallwood,* 698 P.2d 1206, 1210 (Alaska 1985).

4. AS 23.30.110 provides in part:

(a) Subject to the provisions of AS 23.30.-105, [establishing notice requirements for the filing of claims] a claim for compensation may be filed with the board in accordance with its regulations at any time after the first seven days of disability following an injury, or at any time after death, and the board may hear and determine all questions in respect to the claim.

that, because of the nature of the issues involved in the second hearing, Dresser did have notice that modification was a possibility.

■ Hiestand filed the second application for claim adjustment on June 11, 1982. This application was neither an appeal of the Board I decision, nor a request for its reconsideration. According to Hiestand, the application was filed because the "insurance carrier refuses to pay benefits while [the] employee is enrolled in a vocational rehabilitation plan." We see no indication that this application notified Dresser that modification of the Board I decision was being considered, nor that Hiestand was contesting the Board's initial findings.

Two pre-hearing conferences were held prior to the Board II hearing. Hiestand contends that discussions during these conferences should have notified Dresser that modification of the Board I factual findings was a possibility.[5] We disagree.

■ Finally, the record indicates that Hiestand never asked Board II to make a factual redetermination of Board I's find-

ings. Even the Board II hearing transcripts reveal that Dresser was never given notice that the Board may have been considering modification. In fact, in his statements at the Board II hearing, Hiestand's counsel noted that he had "no quarrel" with the Board I decision.[6] Thus, we conclude that Dresser never received the notice required under AS 23.30.110.

### III

Dresser further contends that, even if it had received notice of the modification as required by AS 23.30.110, the Board had no authority to modify its previous findings solely on the basis of Hiestand's changed testimony. Because this issue may arise again, we address it here.

■ Under the Alaska Workers' Compensation Act, the Workers' Compensation Board is granted broad discretion to modify its prior decisions and findings. AS 23.30.130(a). *See supra* note 5.

■ Hiestand defends the Board's action by asserting that no modification occurred, because the Board II decision con-

---

(b) Within 10 days after a claim is filed the board, in accordance with its regulations, shall notify the employer ... that a claim has been filed....

(c) ... If a hearing on a claim is ordered, the board shall give the claimant and other interested parties at least 10 days' notice of the hearing, ....

AS 23.30.130(a) provides in part:

Upon its own initiative, or upon the application of any party in interest on the ground of a change in conditions, including, ... a mistake in its determination of a fact, the board may, ... review a compensation case in accordance with the procedure prescribed in respect of claims in AS 23.30.110. In accordance with AS 23.30.110 the board may issue a new compensation order which terminates, continues, reinstates, increases, or decreases the compensation, or award compensation.

5. The first pre-hearing conference was held on July 19, 1982. The summary reads as follows:

DVR has approved retraining—he's in school learning to be shop instructor. Controversion because jobs available. TTD from 8/81 until through school demand by clmt. No Smallwood. Emp/says no disability, he quit job to go to school, jobs were available, the DVR program is 2 yr degree program & exceeds

SIF by approx $15,000. Plan not submitted to AWCB. Request tape of RH 11/13/81 (Rebecca). Dresser offered to put back at same wage. (Gil says 400/month from DVR. Need depo of clmt. Lura Wallace, Chairman.

The second conference was held on September 7, 1982. The summary of that meeting reads as follows:

Issues the same as before—No Smallwood. Gil wants TTD for time in school. Richard says there were (are) jobs available for clmt to do—he's refused them. George M. from C/W at hrg; Burdick by depo—witnesses at hrg. Clmt to testify in person. No settlement on this one—case will definitely go to hrg. Lura Wallace, Chairman

6. We find the statements made by Hiestand's counsel before the superior court particularly enlightening. Apparently, neither party ever requested that Board II reconsider the findings of Board I, and neither party ever received notice that modification was a possibility. Hiestand's counsel stated:

I agree with Mr. Waller, neither Mr. Waller nor I asked the Board to change its mind on its previous decision.

....

It's—perhaps the procedure was not proper, no notice, I agree, was given to anybody.

cerned his claim for compensation for a different time period. In its Decision and Order, however, Board II modified Board I's findings, although with prospective application. Thus, the Board was required to comply with the limitations of AS 23.30.-130(a).

The scope of the Board's authority to modify its prior factual findings under AS 23.30.130(a) was addressed by this court in *Interior Paint v. Rodgers*, 522 P.2d 164 (Alaska 1974). There, we adopted the standard established by the United States Supreme Court for an analogous federal statute: [7]

> The plain import of this amendment [adding "mistake in a determination of fact" as a ground for review] was to vest a deputy commissioner with broad discretion to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted. *O'Keeffe v. Aerojet-General Shipyards, Inc.*, 404 U.S. 254, 256, 92 S.Ct. 405, 407, 30 L.Ed.2d 424, 426 (1971).

522 P.2d at 168. Here, we conclude that it was within the Board's authority to modify an earlier factual determination. However, because it did so without providing Dresser the notice required by AS 23.30.110, the Board's second order, was improper. Accordingly, the judgment of the superior court is REVERSED and the case is REMANDED to the superior court, with instructions to remand to the Workers' Compensation Board for proceedings consistent with this opinion.

---

**7.** This court has acknowledged that the modification provision of the Alaska Workers' Compensation Act, AS 23.30.130(a), "is in all respects substantially similar to its federal counterpart found in 33 U.S.C. section 922 of the Longshoremen's and Harbor Workers' Compensation Act." *Fischback & Moore of Alaska v. Lynn*, 453 P.2d 478, 484 (Alaska 1969).